Our next case for today is case number 416-0145, Board of Managers, Blackbriar v. Linwood, and for the appellant we have Ms. Hager, is that correct, and for the appellee we have Ms. Delonis, and is that how you pronounce your name? Delonis. Delonis, all right. You may proceed, counsel. Good afternoon. May it please the court, counsel, my name is Bethany Hager and today I am speaking on behalf of the defendant appellant, Linwood, LLC. This case that the court is hearing today is about $180. Well, not really that small amount, but what the case is really about is a bill for attorney's fees in the amount of $180 that was levied against a particular unit owner. So the case concerns whether a condominium association can arbitrarily assign its bills to individual unit owners, and defendant appellant contends that Illinois law says it cannot. On this appeal, de novo review is appropriate because the question here is the application of law to undisputed facts. This court is empowered to independently review the record and determine the correct application of the law where the lower court failed to do so. What this case is not about is credibility, as the appellee has argued in its reply brief on this appeal. There is no dispute over the material facts in this case. The only question is whether the circuit court correctly applied the law to those facts. Now, if the case were about credibility, the plaintiff would still have a problem here because its arguments on appeal contradict the testimony of its only witness at trial. The appeal brief relies on argument concerning a February 2015 assessment. There is no dispute that this assessment came due and that it was paid late by the defendant, nor there is dispute that it was paid in full and paid before the plaintiff filed the complaint in this manner. And at trial, plaintiff's witness was abundantly clear that all the assessments were paid in full before the complainant issue here was filed. That no lawsuit had been required to obtain payment of those assessments. And by the time plaintiff's complaint was filed, every penny involved in that complaint was either attorney's fees, this August 2014 bill, or late fees that the association had piled onto those attorney's fees. Now, plaintiff did not establish its prima facie case either in the complaint or at trial, and that is expounded in appellant's brief in this matter. But plaintiff was required to establish that its complaint sought to recover a proportionate share of common expenses, other expenses lawfully agreed upon, or unpaid fines. And the plaintiff did not establish this. Instead, plaintiff's witness' own testimony stated that the entire amount sought within the complaint was composed solely of attorney's fees, this August 2014 bill, and late fees thereon. That's not a category that's provided for by statute or by any governing document of the association to simply require this bill to be paid by one unit only. Pursuant to Coquinas v. Kotrick, 81 Illinois 2nd, 151, plaintiff's failure to establish its prima facie case either within the complaint or during its case-in-chief should have resulted in directed judgment for the defendant. Arguments on appeal that the plaintiff established its case because of this February 2015 assessment payment, which was late in coming, are unavailable. Why wasn't this an attempt to enforce the condominium rules? It was not, Judge, and I will get to that later. I can address that now if you'd like to move on to that. I'd like to hear you address it now. Thank you. All right, so the plaintiff has conceded several points on appeal here, but what it did come down to is an argument that the August 2014 bill and the complaint was an attempt to enforce provisions of the declaration. And that simply is not true. So the provision of the condominium association's second declaration allows recovery in the event that the condo association incurs attorney's fees in enforcing the provisions of its governing document. But that's a fee-shifting provision. It goes against the common law of the state of Illinois, and so it's required to be strictly construed. That stands with regard to statutes. This is a contract. There's no such requirement with regard to contracts. With Bright Horizons v. Children's Centers v. Riverway Midwest LLC, 403 Illap 3rd 234, the court was construing a lease agreement between the two parties and stated that the provisions, even the fee-shifting provision of that agreement, must be strictly construed. In fact, that court said... Is that a correct decision, and if so, why? It is correct because it follows the treatment of fee-shifting provisions. Why can't the parties be entitled to write their own contracts and let the language speak for itself? And the court in that case said the language did speak for itself. It said, we will construe the provision to mean nothing more but nothing less than the letter of the text. And so it did take the words at their face value and construe them as they were written. Now, in Bright Horizons, one party had claimed the other party to be in default of their agreement, and the allegation was not taken conclusively by the court. In fact, the trial court found the opposite to be true. The other party was in violation. And yet still, that court said, we must construe these fee-shifting provisions strictly and take them at their face value. So if we don't accept that, do you lose? No, Judge. I believe that the Fourth District case of the County of Champaign Housing Authority v. Lyles provides governing authority for this matter in the issue of whether those attorney fees were incurred in enforcing a provision of the Condo Association's governing documents. And in that case, the tenant, Lyles, had been sued with allegations that she had breached the terms of a lease. Again, a private agreement between the parties. And the circuit court there found that Lyles had not breached the agreement, but in fact, the plaintiff had. The housing authority had breached the agreement. So the trial court awarded defendant her attorney's fees as a prevailing party. And the lease agreement in that case stated, if the fees are incurred in enforcing the agreement, then the prevailing party can recover them. But on appeal, it was this court, the Fourth District court, that said, if you're not suing to compel compliance with the requirements of your lease, then the attorney's fees are not incurred in enforcement of that document or lease. In fact, the court said, this court finds as a matter of law that the lessor or lessee would be entitled to attorney's fees only if that party was suing to compel or make effective the covenants of the lease. And in Lyles, you're dealing with a situation where Lyles was defending, not suing, correct? And isn't that the distinction? She was not suing in that case. That is true. She never sued to enforce the covenant of the lease. But we have the same situation here. Those $180 of attorney's fees were not incurred in a lawsuit to enforce the terms of any agreement between the parties. Well, you're adding in a lawsuit, but isn't the case here, let me back up. Do you agree that that amount was owed and was not paid on time? Which amount? The $180? No. Defendant does not agree that that amount was owed. Okay. All right. Thank you. So defendant's position is the $180 bill was not owed unilaterally or singly by defendant because it was not incurred in enforcing provisions of the lease. It was simply an expense that the Condominium Association incurred as part of its business, which those must be assessed specially through a process that the Declaration and Bylaws provides and then divided equally among the unit owners. Did it not stem from the fact that the Condominium Association had to contact an attorney and that attorney contacted your client and then that led to payment of what was due? So the record shows that the Condominium Association contacted Gil Sakely, an attorney in Danville, about what it viewed as a late payment of an assessment. Was the assessment late? The assessment itself was late. Defendant doesn't dispute that. Defendant paid that assessment with a late fee as soon as the owner became aware that it was late and due. So the association contacts Gil Sakely about this late assessment. Gil Sakely, as was testified at trial, and it's in the record, Gil Sakely could not represent the association. Well, let me shorten this up a little bit. But didn't Mr. Sakely, didn't he contact your client about the delinquent assessment? He did. And he billed the association for contacting your client for the late assessment? He did. And your client paid the late assessment after being contacted by him? He did. The phone call to the defendant's owner can only be construed as a courtesy call to a current client. Gil Sakely couldn't represent the association in any capacity. But what does that have to do with a bill being incurred by the association as a result of your client's failure to pay on time? It's defendant's position that the association should have disputed that bill. Gil Sakely, I mean, it's undisputed, he said he could not represent them. But would you like me to give them a call and Sims or whatever his name is says yes, and then they get the bill from Sakely. You've already said he couldn't even represent them. That's right. I quite frankly didn't understand that. I don't understand that either. And that's something that as an association, which I don't represent the association, but if they'd received that bill, I would say, don't dispute this, or don't pay it, dispute it, call that attorney and say, what's the deal? You told me you couldn't help me. They didn't do that, though. For some reason, they paid the bill, and then they tried to turn around and put it on defendant's back. Why did he pay it? Why did who pay? Why didn't he pay the bill? Why didn't he pay the $180? Yes. He believed he was not responsible for that amount. So he's late, he's not paying, they call, Sakely calls, then he pays. They call Sakely, Sakely calls him and says, hey, they're out to get you, they're thinking about suing you, you've got to pay this. He says, I forgot, he sent in the payment of the assessment that was lawfully imposed. There was no indication from Sakely or anyone else that Sakely would then bill somebody that might come back to defendant and its owner. It was a reminder call from current counsel to current client saying, heads up, this is happening. And thanks to that reminder call, he paid his late assessment. He paid it with a late fee. But the bylaws in the Declaration of the Condo Association even give him a grace period before he would have been considered in default where they could have sued on that assessment. And it's undisputed that he paid that assessment with its late fee well before anything accrued to have this current complaint filed. This current complaint is based only on that $180. Nothing else was outstanding and due. So there's no precedent for holding one unit owner individually liable for what was essentially kind of a random bill. So what if he had said, I ain't going to pay, and Sakely called him and says, you really should pay so they don't have to sue. Then what? Then he decided to pay. That's advice from your lawyer and probably defendant should have gotten that bill from Sakely for that phone conference. I can't explain why Sakely decided to build a condo association for that. So Sakely had billed your client, everything would have been fine? Hypothetically speaking, it's possible. Sure. It's a current lawyer talking to a current client. That attorney bill was not incurred by any lawsuit or any attempt to enforce the provisions of the document. That has to be attached. Every description of attorney's fees being incurred in enforcement or arising out of default or being lawfully added to some other charge has a lawsuit attached to it. There was no lawsuit attached to this bill. It was just sent out of the blue. He said, I don't have to pay this, and that's when they decided to sue him because he did not honor and pay that $180 bill. Plaintiff acknowledged at trial. He testified that Sakely did not represent plaintiff in any capacity against the defendant. In fact, he stressed that Sakely could not, not would not, could not represent plaintiff against him. So Sakely was not under any impression that he should be owed, that he should, the association should have to pay that bill either. Given that attorney Sakely could not, not would not, could not represent the plaintiff, his second phone call was at best a courtesy call to his own client informing him a lawsuit might have come. Never has it been heard of charging a non-client for work done on behalf of a client. And so to come to the question that Your Honor asked earlier, when that bill arrived to the Condo Association, logically speaking, they should have disputed it. They should have called and said what's going on, but they didn't do that. We can't do anything to go back and change that now. In the end, this case is not merely about a $180 bill. It's about the rule of law. While a condominium association is empowered to enforce its governing documents, it is not empowered to require more than that. It cannot simply receive a bill and arbitrarily require one of its members to pay the entire thing. There is a process within the Declaration and Bylaws to take a bill that comes in, to divvy it up among the unit owners, to levy an assessment, and then to ask for payment. The Condo Association did not follow that procedure in this instance. In fact, there is testimony on the record that there was no vote to assess this charge or any other charge connected with it to the defendant unit owner or any of the other unit owners until well after the initial complaint in this matter was filed. So it was an attempt to go back and bootstrap and correct an error they found out. There was no lawful levy of an assessment against the defendant unit owner. What this Court can correct is the final error that leads the parties here. Plaintiff overstepped its authority and attempted to lay its $180 August 2014 attorney fee bill at defendant's doorstep. Then the lower court erred in allowing that claim. There is no evidence in the record to support the Circuit Court's finding in an attempt to rescue the plaintiff's claim. It found that the $180 bill was a special assessment. Well, there is no evidence in the record to support that. There is simply no authority in the law or the governing documents for this finding. In fact, that finding is expressly contradicted by the testimony of plaintiff's own witness at trial who testified that the Association did not vote to levy any assessment against defendant regarding that bill until well after the complaint in this matter had been filed. So even though defendant's position is that the standard of de novo review applies here, even that more deferential standard of manifest weight of the evidence would not save the Circuit Court's decision in this case. Pursuant to Halpin v. Schultz, 234, Illinois 2nd, 381, that finding was unreasonable, arbitrary, not based on the evidence presented, and so it must be subject to reversal upon review by this appellate court. Counsel, we also have a second assessment, the second Phase 4 assessment that was due February 20th, right? Yes. And also was not paid on time. My understanding is that was paid prior to this lawsuit being filed, is that correct? That's correct. But it was paid late? It was paid late. And there's an allegation that there were fees incurred in terms of enforcing the payment for that as well? To my knowledge, and the record supports, that there was no enforcement mechanism set in place to recover the February 2015 assessment. Now did they hire a law firm to, I'm trying to recall exactly what they hired the law firm to do, but it related to collection of the February, maybe something about the title? Okay. So they may have hired the attorney prior to get that complaint ready and to prepare something regarding the title. But as far as the defendant unit owner was concerned, he became aware that the payment was late through a third party. There was another scenario, and so he was aware the payment was late, then he paid it, taxed that $100 late fee on. Is that really relevant? I mean, you have a contract and you have due dates. Is it some type of defense that, well, I didn't realize that was the due date or someone had to remind me? I mean, doesn't it boil down to this is when it was due, it wasn't paid when it was due, they undertook this action to get it paid, and then it was paid, and maybe they didn't have to get into court. But there was action taken, fees incurred as a result of pursuing the payment. I see where Your Honor is headed. I think what the defendant's position here boils down to is that he was reminded of the payment and did make it before he was ever aware that the other attorney had been hired and that the action behind the scenes had been taken. So is there some requirement that he has to be aware of that? I don't know how he can be responsible for those costs incurred behind the scenes. Just pay up on time. How about that as an idea? He did pay the late fee that's required by the Declaration of Violence. But prior to that... I'm not sure how he could know what attorney fees had been incurred. He had no knowledge. So if he's late, they have no right to hire an attorney to seek the others in force? Once he makes the payment, is there any need to enforce and seek the... Well, they hired an attorney prior to him making the payment. But it was not the attorney's involvement that spurred the payment. So he made the payment. He had no knowledge the attorney was involved. I'm not sure how you arrive at any point where he's already made the payment, and yet we get to come back and say, but we did all this work. Well, isn't the inquiry, did they do this work? Did they incur these expenses as it relates to trying to enforce? Whether or not your client was aware, isn't that the inquiry, whether or not they incurred these expenses in trying to enforce this? By the time it came to trial on this complaint, that is not what they were seeking to recover. But at the time, they incurred the expenses is what I'm referring to, not when the complaint was filed. That may be their argument, but I cannot concede that defendants should have to bear that burden. When he had no knowledge or no way to know... He knew he had not paid on time. And when he discovered that, he paid it with the late fee. He resolved the issue under the governing documents. I thought there was an issue of whether he did get notice of this assessment. There was some talk on the record and in the transcript about the communication between the parties. And I think defendant did testify that he didn't receive reminders of the different payments that were due. So the association voted, I think, in one block to do these broken up payments. And then there was talk on the record of whether the reminders went out, whether they went to the correct address or the correct email address. And so defendant did at one point say he did not receive any reminders that may have been sent out, but it comes down several years ago he knew these were coming due. And when he found out the date had come and gone, he did make the payments. He did pay the late fees. The argument here is that when you take action behind the scenes, and in this case, that $180, it was completely ineffectual action to so-called recover this payment, that the defendant cannot be held responsible for that. Counsel, thank you. You're out of time. You'll have more time on rebuttal. Good afternoon. Thank you. May I please report? I'm Barbara Delanus. I represent the Condominium Association. We had a bench trial. Blackbriar, the condominium, won a judgment at the bench trial. The judgment was reduced to an order with findings, and that order is dated February 16, 2016. That order says that the defendant was, in fact, in default. Now, with respect to the argument that Gil Stakely, out of the clear blue, sent a bill, you'll find in the transcripts that Mr. Sims, who's the president of the Condo Association, says, well, I had to call our condo attorney. So when Mr. Sims is calling our condo attorney, he's calling the attorney that's represented the condominium. Interestingly enough, that same law firm also represented either Mr. Byram or Linwood LLC, his limited liability company. Mr. Sims' testimony is that, you know, hey, I just need to get this guy to pay this bill. And Stakely's saying, well, I can't do a lawsuit. I can't get into something adversarial. It's the way I interpreted what his comments were. So what he does is he makes a call. Is it a courtesy call? Nothing in the record that suggests it's a courtesy call. What's in the record is that Stakely called to get Mr. Byram or Linwood LLC to pay the late assessment, which was the July assessment. Well, he says, I can't represent the Condo Association, but you want me to give Linwood a call. To me, that seems like he's doing it as courtesy. And to get a bill from somebody who says, I cannot represent you, and then he bills them, seems very odd to me. Yeah. I can't explain what Mr. Stakely did. All I know is that the Condominium Association viewed Mr. Stakely as its condo lawyer. And so, therefore, there was an attorney-client relationship with respect to condominium documents and being the condominium lawyer. My interpretation is he could not take it beyond a, well, let me see what I can do to get it worked out, as to make a call. And the court found, right after hearing it, the very first comment was, Mr. Byram testified that he was late paying the assessment, which necessitated a phone call or brought on a phone call by Mr. Stakely, at which point he paid. So, the phone call was related to an attempt by the Condominium Association to get Mr. Byram to pay the bill. And then the court finds the bill is something the Condominium Association can pursue the owner of the unit. And he says, he sent a check for, this is Byram, sent a check for $100 basically saying, I'm not paying the $180, which started all of this. Now, that's Judge Girton's findings, and he's finding that this $180, based on the testimony, based on what Judge Girton heard and saw and considered in a trial, that this work by Stakely, Mr. Stakely, was to enforce a covenant, that is the payment of an assessment. Was the assessment paid as well as the late fee before any lawsuit was even filed? Yes, it was. The assessment was paid, then later on a late fee was paid. And then we come up on the second assessment that's due in February. And in February, that assessment was not paid until March 25th or so. And with respect to the February assessment, the Condo Association again says, we have to do something to collect this. But the assessment was paid as well as a late fee before any complaint was filed. Correct. But the Condo Association incurred attorney's fees associated with efforts to get the assessments paid. And it's those attorney's fees that are recoverable under the condominium documents. When did the Condo Association Board vote to issue a special assessment? There's nothing in the condominium documents or in the law that requires any affirmative action by the Condominium Association to vote on anything. The condominium, the declarations just state when you're late or you don't do something you're supposed to do, the Condominium Association has the right to charge the violator reasonable attorney's fees incurred. Period. They don't have to vote on a special assessment. They don't have to do anything like that. Now, you've got to keep in mind we're dealing with a 6-6 unit condo. Every single one of those unit owners is a member of the association and a member of the board. They all know what's going on. It's a very, very small community. Now, some of the discussions or some of the evidence at court was Mr. Byron said he didn't know about it.  The judge is listening to the testimony saying that Mr. Sims sent him emails, asked him for his involvement and whether or not to split the fourth phase of the siding job into two payments, which would make it more manageable. Mr. Sims used the email addresses he typically used, never got responses, no reaction. But Mr. Sims testified throughout the record that he alerted Mr. Byron of every moment of fees that were due and when they were due. He sent out just reminder notices, nothing. So, you know, the court in weighing the evidence and taking a look and considering, you know, what the court's going to believe and what the court's not going to believe, it would appear because the court found this, oh, the court made a determination in its complete and unfettered discretion, decided to believe the statements and the evidence produced by Mr. Sims concerning the notices. What evidence was introduced about the reasonableness of the fees? I'm sorry, about the recent? About the reasonableness of the fees. What evidence was introduced on your behalf? Judge Gerton made a finding saying he finds that $250 an hour is not unreasonable. And Mr. Sakely's fee of $180 was within the parameters of that $250. Didn't you want to introduce some evidence and he did not allow it because your case was closed? That he did not. He did not allow you to reopen your case to introduce any evidence about the reasonableness of the fees. An affidavit, there was nothing in the record. In fact, my reading of the transcript was he was speculating on whether or not the fees were reasonably incurred in the amount that they were incurred. Right. The defendant introduced some of my bills. They weren't itemized, were they? No, they were. They were definitely itemized bills. They're itemized invoices and they are in the record. But the work that was done and the amount that was spent were incurred? Yes. Yes, I believe they were in there. And as far as reasonableness of attorney's fees, the judge found that the $250 an hour was a reasonable fee. Now, I did ask for leave of court to submit an affidavit because as we were in court, I had no idea to know exactly what was going to happen in court so that I can even prepare a final bill of fees. And typically, we would submit an affidavit of attorney's fees. So, we get around to trying to decide the final order. And the final order, when we went to court to argue on the final order, the judge made a decision. Well, you know, on second thought, I'm reversing myself. I'm going to let you submit an affidavit of attorney's fees to show reasonableness to make determination what the attorney's fees should be. So, we went back to the drawing board. We submitted an affidavit of attorney's fees and that is in the record. And then, he came back and there was no objection to anything in the attorney's fees affidavit that was submitted. And this would have been February-ish, early February or late January. And from that point, he then finalized his decision and issued the order with the findings of the default and the dollar amounts of the default. And in the order, there is a provision that talks about the reasonableness of the fees and so far as how the defendant went about defending the case. Well, somehow I made a note that says no invoices were introduced to show the hours worked. There were invoices submitted by the defendant during trial. I can get you those exhibits. Well, I'm asking about your invoices. Those were my invoices. Those were my invoices. Okay, yeah, if you can pull those for me when you get a chance. You can finish your argument and then look for it during rebuttal. Okay, well, and then with respect to the affidavit, the affidavit shows every tenth of an hour of billing that was done. And the order was not entered until after the affidavit was finished. When Zankley submitted his bill to the association, was there any objection made by the Linwood folks? No. They shouldn't be paying this? No, Your Honor, Steve Sims sent Linwood a letter and that too is in the record saying, okay, you now owe $100 for a late fee and $180 for Judge, I mean, Mr. Zankley's fees. And there was no response other than the payment of $100 was sent. In other words, there was no claim that, wait a minute, Zankley's my lawyer. What's this all about? You can't be doing this and he can't be representing you. No. Essentially the argument we heard here. Yeah, nothing in the record with respect to that. Was that presented at trial? Was that argument presented at trial? No, no. Okay. Now, Justice Pope, if you would take a look at, the record is C-201 in Volume 1, Affidavit of Attorney's Fee per Court Ruling of January 5, 2016. And in that document, it's divided into time beginning March 2, 2015 through October 15, 2015, which is the date of the trial. And then... So this is after the trial? Yeah. Because what I'm looking at is a partial transcript that says, where you're asking Lief to submit an affidavit with every single one of your invoices. And he says, this was your trial. And then he says, I'm going to find attorney's fees in the amount of $7,000 on top of the $780 or $7,880 is the amount of the judgment. So it didn't seem to me like he was basing that on any invoices of any kind. Yeah. And let's take a look at the exhibits. The exhibits are at Defendant Exhibit Number... So that would be what? Volume 2. Defendant Exhibit Number 1, Number 2, Number 3, Number 4. So there are invoices on record. Were they introduced after trial? No. These were introduced in her case in chief. Their case in chief. Interesting. You're sitting there wondering now, why did she introduce these instead of the plaintiff? And well, typically, you know, when there are other attorney's fees that are due, you wait and you submit attorney's fees in an affidavit. Much like the Lyle case, the Champaign Housing Authority Lyle case. That case found that there was no... Let's see, the plaintiff sought an eviction. And eviction was denied because the plaintiff did not do the statutory notice before someone is obligated to move out of an apartment. Nonetheless, they took to court. Plaintiff lost. Then defendant turned around and filed a motion for or a petition for fees. And then it was that petition in Lyle that was eventually denied. First it was granted, then the appellate court. This appellate court denied that because, you know, it was the provision in the lease that for someone who brings something to enforce as opposed to defend a lawsuit. But no, Justice Pope, there are invoices in there. And the transcript by Judge Girton, he's discussing these bills and he's concerned about how much the bills, you know, the level of the attorney's fees. You asked for $24,000. Oh yes, I did. For a $180 bill. Oh yes, and you know, that was unfathomable. And Judge Girton found, you know, I can do this. And, you know, the thing is, to do an appeal of attorney's fees, you know, I'm coming to this court asking the court to make determination that the lower court abused its discretion. And so I'm thinking, what's the chance of coming to court asking the court to rule, finding maybe I should have had more fees? Because it's an abuse of discretion standard. Where I believe we're here on a manifest way to the evidence issue because this went to trial. The judge made his findings after determining the facts and the credibility of the witnesses. And the judge's findings is what really controls the day unless there's some evidence, some argument that shows his findings are beyond the manifest way to the evidence. Counsel, let me pursue one aspect here. There seems to be another current in this case that Sakely's bill is bogus to begin with because he was counsel for Byram and that's why he shouldn't have submitted the bill to the Condo Association. And when Sakely submitted this bill for $180, did Byram or anyone else at any point say, wait a minute, this is improper, Sakely can't be billing you because he was my lawyer too and none of this bill should be paid by you and no one should be paid? No issue on that. No comments, no objections, no. Steve Sims perceived Sakely was their lawyer. I guess he was their lawyer. There's no question about that. The only issue is what arises because he also happens to be Byram's lawyer. What arises? Probably a tad bit of a conflict of interest. So he offers to make this phone call and then maybe he shouldn't have billed the condo, but he did. And the point is I'm just wondering to what extent was this argument about the inappropriateness of Sakely's behavior, the argument that Ms. Ager seems to have made here, raised to the trial level and what did the trial court say about it, if anything? It was never raised at the trial level about the appropriateness. Did Judge Gerton make a comment about it, though? I thought Judge Gerton did make some comment. Judge Gerton's comment was Byram testified he was late paying the assessment, which necessitated a phone call and brought on a phone call by Mr. Sakely. The phone call by Mr. Sakely resulted in a bill. That bill is something the Condominium Association can pursue the owner of the unit to pay. I thought he made some other comment about he couldn't understand why Sakely even sent the bill. He initially said he couldn't represent them, but I had to look for it. You know, in this case, it's a matter of enforcing the covenants, period. And in an attempt to enforce the covenants, they asked Sakely to intervene. Sakely intervened, and when you've got, I think, naïve for lack of a better word, consumers of legal services, if they get a bill, they pay it. Thank you, and I'd ask you to affirm the trial court. Thank you, Ms. Delaney. Ms. Hager, any further argument? Yes, thank you, Your Honor. I want to get one thing clear on the record. Okay. You're not disputing that your client was aware of these various due dates. You're disputing whether or not he received reminders, but your client was aware of these various due dates. Sure, he was aware that he owed them. It slipped his memory to pay them when he became aware that they were late. He did pay those underlying assessments with late fees. I do want to clarify that by the time this case reached its judgment on February 16, 2016, that judgment amount is in the record. I believe it's $78.50 was the final judgment amount. And that amount is composed of the $180 fee bill from Attorney Sakely, $700 in late fees that the association piled onto that bill, and then the balance of the judgment was Ms. Delaney's attorney's fees tied to the underlying LN case. Including the February assessment. I believe that she made argument that that was tied in there, but really you do have the affidavit and the invoices that were submitted asking for $24,000, and then the judge brought it down to something like $6,000. And I don't know that there's an explanation in the record of which parts he kept, which hours he kept, which he threw out. So you end up with almost a $6,000 attorney fee bill from Ms. Delaney. Now, the thing is, those attorney's fees get tacked onto the judgment only if that underlying base of the judgment, the $180 bill from Attorney Sakely, is recoverable in the first place. So that's why we're here. Because that base of the judgment, defendant's position is, could not be recovered from defendant. It's either an assessment, a special assessment, which the court said in his findings, this is a special assessment against defendant, but there was no vote for it that is required by the Declaration and Bylaws, that there would be a vote to assess and make this special assessment. It's either that, or it was incurred in enforcement. And we've talked about the fact that under Champaign County v. Lyles, this incurred in enforcement phrase has a very specific meaning. And simply put, that $180 bill cannot be construed to be incurred in enforcement. Is it at all pertinent in this case that Sakely was Byram's attorney as well? I believe it is. I believe the reason it becomes pertinent is this. Because Attorney Sakely made two phone calls, billed them to the Condo Association. The first phone call is essentially, he billed them to say, I can't help you. He billed them for something where he couldn't take the case any further. And then he billed them for a call to another client. And now, Your Honor, you talked about, was this raised at the trial level? Was it talked about in the trial and at that level? There were eyebrows raised. I do believe if you look back through the transcript, you will find a comment. So eyebrows are raised. Is it pertinent to the issues before us? The eyebrows were raised? Yeah, that it matters. In other words, let's assume Sakely was not Byram's lawyer as well. Would your argument be any different? I think you still have the issue that he billed them to say, I can't help you. Would your argument be any different? I'm not sure I can speak to that in the time period here, that hypothetical. Well, I. It's possible. I still would say that bill was not incurred in enforcing the provisions of the condominium's governing documents. It's a floating out there bill. It was never voted to specially assess it against anybody. And it was not incurred in enforcement. Now, for that attorney fee bill from Attorney Sakely to be recoverable, it would have to be subjected to the reasonableness standard. And it never was. There was not testimony in trial about the reasonableness of Mr. Sakely's bill, the hourly fee that was involved, and the time that was expended. And so under the Condominium Act, Section 9111B requires those fees to be reasonable, as well as attached to some kind of judgment or some kind of enforcement action. But the court did find them to be reasonable? He levied the judgment against them as a special assessment. I'm asking you a question. Did the court find them to be reasonable? I think as part of his finding that they were special assessment, that could be construed as part and parcel of it. I don't recall a specific finding that they were reasonable. I think you also have the problem of testimony from plaintiff's witness that he was going to seek an expensive and mean way out of this if the payment was not received. So that bears on the reasonableness argument. The transcript shows that plaintiff's witness was trying to seek punitive nature against the defendant. And as to whether the defendant disputed the bill, he received a bill that included the $100 late fee plus the $180 attorney's fee. He only paid part of it. So he did not pay this bill when it was presented to him because he did not owe it what was not properly levied against the defendant's account. And for that reason, defendant asks that this court reverse the judgment of the court below and remand with instructions for the circuit clerk to enter judgment for the defendant and that all parties bear their costs. Thank you. Thank you, counsel. We'll be in recess and take this matter under advisement.